```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

                              )
UNITED STATES OF AMERICA      )
                              )
         v.                   )   CRIMINAL NO. 04-10288-RWZ
                              )
JAMES GARDNER                 )
                              )
```

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, hereby files this sentencing memorandum to aid the Court in its disposition of the above-captioned action.  As set forth more fully below, the government submits that James Gardner's ("Gardner") Total Offense Level ("TOL") is 29, his Criminal History Category ("CHC") is II, and his Guideline Sentencing Range ("GSR") is 97 months to 121 months.[1]

Gardner pled guilty to counts one and eight of the indictment, which charged him with conspiring to possess with intent to distribute, and to distribute, oxycodone; and the distribution of oxycodone on January 6, 2004.  The January 6,

---

[1] Without considering the evidence received at the two-week trial of co-defendants Carlos Espinola and Joseph Allen, U.S. Probation Officer Jo Lyness determined that Gardner's TOL is 19, and his GSR is 33 to 41 months.  Ms. Lyness left it to the Court to determine what use to make of the trial evidence with regard to Gardner's sentence.  In the Presentence Report ("PSR"), Ms. Lyness noted that "the Court is in a better position to assess this information [trial evidence] to determine if it should be included as relevant conduct...[t]herefore, the Probation Department has not made any changes to the report, but has included alternative calculations below.

2004 distribution involved one-hundred (100) eighty (80) milligram OxyContin tablets. Gardner delivered the OxyContin to co-defendant Keith Behsman, who then sold the OxyContin to two undercover police officers for $5,500. The one-hundred (100) OxyContin tablets is equivalent to 53,600 grams of marijuana pursuant to the Drug Equivalency Table at U.S.S.G. § 2D1.1 (See PSR at para. 95); and results in a Base Offense Level ("BOL") of 22 (See PSR at para. 96).

Gardner's participation in the OxyContin conspiracy was substantially greater that his January 6, 2004 delivery of one-hundred (100) OxyContin tablets to Keith Behsman. Pursuant to U.S.S.G. § 1B1.3, Gardner is responsible for sentencing purposes for all relevant conduct and the reasonably foreseeable acts or omissions of his co-conspirators.

Joseph Baldassano, who the Court characterized at his sentencing hearing as second-in-command of the conspiracy, gave detailed testimony at the joint trial of co-conspirators Espinola and Allen regarding the conspiracy and the participation of the conspiracy's members, including Gardner.[2] Baldassano testified that he regularly supplied Gardner with OxyContin, which Gardner used to supply his own customers. Baldassano testified that he supplied Gardner with thirty (30) to fifty (50) 80-milligram

---

[2] The Court noted at a side-bar conference pertaining to a Rule 29 motion that it substantially credited the trial testimony of Baldassano.

OxyContin tablets per week.  This went on from the summer or fall of 2002 through June 2004.

The total number of 80-milligram OxyContin tablets supplied by Baldassano to Gardner during this period is a minimum of 2,280.[3]  Moreover, Baldassano testified that after the sale of one-hundred OxyContin tablets to undercover agents on December 2, 2003, he met with Gardner inside a nearby Newbury Comics store and distributed thirty (30) to fifty (50) 80-milligram OxyContin tablets to Gardner.  Surveillance officers observed Baldassano and Gardner inside the Newbury comics store, but were unable to witness the transfer of OxyContin.  Baldassano also testified that Gardner accompanied Baldassano to Espinola's house in Peabody to pick-up OxyContin.

As noted in the PSR, the United States submits that Gardner should be held responsible for sentencing purposes for at least 21,000 80-milligram OxyContin tablets, which results in a BOL of 36.  With a three level reduction for acceptance of responsibility and tendering a timely guilty plea, Gardner's TOL should be 29.  The government agrees with U.S. Probation that Gardner has a CHC of II.  As a result, the government submits

---

[3]This amount is determined by calculating one month (December) of distributions in 2002, twelve months of distributions in 2003, and six months (January trough June) of distributions in 2004; and calculating an average of thirty OxyContin tablets per week (Baldassano testified that the amounts varied between thirty and fifty tablets per week).

that Gardner's GSR (29/II) is 97 to 121 months.

Sentencing Recommendation

The government respectfully recommends that this Honorable Court sentence Gardner to 109 months imprisonment.  This length of confinement is in the middle of the GSR.  Unlike many of the defendants in this case, Gardner maintained his own OxyContin distribution business, with his own client/customer base. Gardner dealt in a large number of OxyContin tablets (over 21,000) over a lengthy period of time.  Gardner's criminal record includes convictions for assault and battery, and negligent operation of a motor vehicle, and continuances without a finding for possession of a Class A and D controlled substances.

By his own account, Gardner was raised in a stable two-parent "middle class" family and experienced a good childhood (See PSR paras. 118-12).  He graduated from Gloucester High School and attended Salem State College for a number of semesters.  Gardner was given every opportunity and many advantages to live a law-abiding, successful life.  Unlike many of his co-defendants, Gardner does not appear to have been addicted to OxyContin (See PSR para. 133 - he used OxyContin "a couple times a week" and does not think he would benefit from a drug treatment program).

Gardner repeatedly violated the conditions of release set by the Court.  Shortly after his release, he tested positive for the

use of OxyContin.  On two occasions prior to his Rule 11 hearing on March 17, 2006, Gardner failed to report to Pretrial Services for mandatory drug testing.  He failed to report for mandatory drug testing on six occasions after his Rule 11 hearing.  Gardner also failed to submit Narcotics Anonymous meeting slips to Pretrial Services as he was required to do by his conditions of release.  The court revoked his release as a result of his violations.

    A sentence of 109 months confinement is appropriate given the gravity of Gardner's criminal conduct, his past involvement with drugs, his failure on pretrial release, and the devastating effect the illegal sale and use of OxyContin has had on Gloucester.

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

                              By:/s/ David g. Tobin
                                  DAVID G. TOBIN
                                  Assistant U.S. Attorney

Date: July 11, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) .

          /s/ David G. Tobin
          DAVID G. TOBIN
          Assistant United States Attorney

Date: July 11, 2006